IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ALBERT L. RICHARDSON, JR.,** | |
| Petitioner, | |
| v. | Case No. 20-cv-99-SPM |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

## MEMORANDUM AND ORDER

**MCGLYNN, Judge:**

Pending before the Court is an amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. 14) filed by Petitioner Albert L. Richardson, Jr. ("Richardson"). Within the motion, Richardson asserts claims under *Rehaif v. United States,* ___ U.S. ___, 139 S.Ct. 2191 (2019) as well as ineffective assistance of pretrial and trial counsel. For the reasons set forth below, the motion is DENIED.

### FACTUAL & PROCEDURAL BACKGROUND

On April 5, 2018, a Complaint was issued against Richardson for the offense of possession of a firearm by a felon in violation of Title 18 U.S.C. 922(g)(1). *United States v. Richardson*, 18-cr-30066 at Doc. 1 (S.D. Ill.)(CR. 1).[1] This charge is predicated upon an incident that occurred on April 2, 2018 when East. St. Louis police dispatcher called for assistance in the area of 35th and Market Streets in East

---

[1] All documents cited to the criminal case will be designated as "CR.", while all documents cited to this 2255 matter will designated as "Doc.".

St. Louis, Illinois regarding a subject firing shots into the air (Doc. 23, p. 2).

On April 9, 2018, the federal public defender was appointed, and on April 13, Dan Cronin entered his appearance (CR. 9, 11).  On April 17, 2018, a grand jury indicted Richardson on one count of felon in possession of firearm in violation of 18 U.S.C. 922(g)(1) (CR. 12). There was also a firearm forfeiture allegation (*Id).*

On April 25, 2018, Richardson appeared for arraignment before a magistrate judge (CR. 17). On that date, this case was set for jury trial on June 4, 2018 (*Id.*). On May 21, 2018, Cronin filed a motion to continue to discuss plea negotiations, per Richardson's request (CR. 21). On May 22, 2018, this matter was continued to September 22, 2018 (CR. 22).

On August 22, 2018, Cronin filed a second motion to continue claiming that plea negotiations had broken down, and that, because his client wished to proceed to trial, additional investigation was needed (CR. 24). On August 23, 2018, an Order was entered continuing the jury trial from September 22, 2018 to October 15, 2018 (CR. 25).

On September 21, 2018, Cronin filed a motion in limine to prohibit impeachment of defendant by prior criminal convictions, along with supporting memorandum of law (CR. 27 – 28). On September 24, 2018, the government filed its notice of intent to introduce prior convictions (CR. 31).  On October 15, 2018, the final pre-trial conference was held, at which time an Order was entered allowing prior convictions regarding theft and/or dishonesty, but barring prior convictions regarding guns and/or drugs (CR. 36).

On October 17, 2018, the jury returned a guilty verdict (Cr. 45). On January 25, 2019, Richardson was sentenced to the custody of the bureau of prisons for a term of 96 months, to be followed by a period of 3 years supervised release (CR. 55). Judgment was signed on January 29, 2019, executed on February 11, 2019 and returned on April 12, 2019 (CR. 57, 65).

On February 11, 2019, Richardson filed a *pro se* notice of appeal, which was dated January 25, 2019 (Doc. 60). On February 11, 2019, Richardson also filed a motion to withdraw the aforementioned notice of appeal (Doc. 61).

On January 23, 2020, less than one year after judgment was entered, Richardson timely filed his *pro se* motion to vacate, set aside or correct sentence pursuant to Section 2255 (Doc. 1). On April 14, 2020, after obtaining leave of court, Richardson filed an amended *pro se* motion (Doc. 5). On April 15, 2020, the public defender's office was appointed because Richardson raised a claim related to *Rehaif v. United States* (Doc. 6). On April 29, 2020, Cronin filed an entry of appearance, but also filed a motion to withdraw because the ineffective assistance of counsel claims involved his prior involvement (Docs. 7, 8). On April 30, 2018, Lee Lawless, of the federal defender's office for the Eastern District of Missouri, was appointed and Cronin was granted leave to withdraw (Doc. 9).

On August 12, 2020, Lawless filed an amended motion to vacate conviction and correct sentence under 28 U.S.C. §2255 (Doc. 14). Richardson raises four grounds for relief in his motion premised on the following: (1) *Rehaif v. United States*, 139 S.Ct. 2191 (June 21, 2019); (2) Ineffective assistance of counsel

regarding Toradol injection; (3) Ineffective assistance of counsel for failing to object to Officer Slack's testimony; and, (4) Ineffective assistance of counsel for failing to object to the submission of Officer Slack's trial testimony to the jurors (*Id.*). On November 6, 2020, the government filed their response to Richardson's motion (Doc. 23).

## LEGAL STANDARD

Relief under 28 U.S.C. § 2255 is limited. Unlike a direct appeal in which a defendant may complain of nearly any error, relief under Section 2255 is reserved for extraordinary situations. *Prewitt v. United States*, 83 F.3d 812 (7th Cir. 1996). A petitioner may avail himself of relief under § 2255 only if he can show that there "are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878 (7th Cir. 2013); *Accord Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004).

If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light **most favorable to the government**. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir.2000)(emphasis added).

Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *Coleman v. United States*, 318 F.3d 754,

760 (7th Cir. 2003), *cert. denied*, 540 U.S. 926 (2003); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *White v. United States,* 371 F.3d 900, 902 (7th Cir. 2004). Accordingly, a petitioner bringing a § 2255 claim is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstance; (2) non-constitutional issues that could have been, but were not raised on direct appeal; or, (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the "procedural default" and actual prejudice from the failure to appeal. *Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994). Despite that general requirement, defendants are not required to raise ineffective assistance of counsel claims on direct appeal to preserve them for collateral appeal purposes. *Massaro v. United States,* 538 U.S. 500, 504 (2003).

## ANALYSIS

**I.** ***Rehaif v. United States, 139 S.Ct. 2191 (2019)***

Richardson was charged and convicted with the offense of felon in possession of firearm in violation of 18 U.S.C. § 922(g)(1) (CR. 1, 12, 45). Richardson claims his conviction is invalid because the grand jury did not allege and the jury did not find as fact that he knew it was unlawful for him to possess a firearm based upon his status as a felon (Doc. 14, p. 7). Specifically, Richardson asserts that in accordance with *Rehaif,* the government must plead and prove that a defendant knows of his status as a person barred from possessing a firearm. 139 F.3d at 2194. Richardson further claims that these omissions are "structural errors" (Doc. 14, p. 7).

The government counters that because these omissions were not raised in

original motion, they are procedurally barred (Doc. 23, p. 14). They further assert that the failure to include the element of knowledge in both the indictment and jury instructions did not result in a "structural" error. (*Id.*).

### A. Applicable Law

In *Rehaif v. United States,* the United States Supreme Court held that in order to obtain a conviction under § 922(g), which prohibits certain categories of persons from possessing a firearm, the government must prove "that the defendant knew that he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Thus, for defendants charged under § 922(g)(1), which applies to felons, the government must prove, or the defendant must admit, "that he knew he had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." *United States v. Williams*, 946 F.3d 968, 973 (7th Cir. 2020) (quoting 18 U.S.C. § 922(g)(1)).

Prior to *Rehaif*, courts of appeal, including the Seventh Circuit, had held there were only three elements to a violation of 18 U.S.C. § 922(g): (1) that the defendant knowingly possessed a firearm, (2) that he was a convicted felon at the time he possessed the firearm, and (3) that the firearm traveled in interstate commerce. However, in *Rehaif*, the U.S. Supreme Court held that there is a fourth element that must also be proven – (4) that the defendant knew at the time he possessed the firearm that he had been convicted of a crime punishable by imprisonment for more than one year. 139 S. Ct. 2191.

The Seventh Circuit has held that in cases where a defendant seeks

collateral review of a sentence based in *Rehaif*, the defendant "bears the burden of showing that his erroneous understanding of the elements of § 922(g) affected his substantial rights before he may do so." *United States v. Williams*, 946 F.3d 968, 970 (2020). In his § 2255 petition, Richardson argues that the Court erred in convicting and sentencing him for knowingly being in violation of § 922(g)(1).

### B. Discussion

In the underlying criminal case, the grand jury indictment did not allege nor did the petit jury find that Richardson knew it was unlawful for him to possess a weapon as a convicted felon (Doc. 14) Richardson asserts that those *Rehaif* errors are structural. *United States v. Gary*, 954 F.3d 194, 207-08 (4th Cir. 2020). In *Gary*, the Fourth Circuit Court of Appeals held that the district court's acceptance of the defendant's guilty plea without first informing him of the Government's burden to prove that the defendant knew that he belonged to a class of persons barred from possessing a firearm constituted "structural" error. *Gary*, 954 F.3d at 205-07. Consequently, the Court vacated the defendant's guilty plea and convictions. *Id.* at 208.

*Gary* is inapplicable to Richardson's case. First, *Gary* does not support retroactive application of *Rehaif* on collateral review; unlike the instant case, *Gary* was a direct appeal from the defendant's criminal conviction, not a collateral review case under § 2255. *Gary*, 954 F.3d at 198-99. Further, the Seventh Circuit has rejected the structural error argument. *See United States v. Maez*, 960 F.3d 949, 957-58 (7th Cir. 2020) (omission of the *Rehaif* element is not a structural error).

Therefore, Richardson's *Rehaif* challenge is denied.

## II. Ineffective Assistance of Counsel

Richardson raises three separate claims of ineffective assistance of counsel against Cronin (Doc. 14). First, Richardson asserts that Cronin failed to investigate Travadol and/or produce evidence about side effects of depression and confusion that would have provided a basis for a motion to suppress (*Id.,* pp. 9–14*)*. Second, Richardson asserts that Cronin failed to object to Officer Slack's reference to Richardson's father's out-of-court statement (*Id.*, pp. 15-16). Third, Richardson asserts that Cronin failed to object to submission of Officer Slack's testimony transcript to jury (*Id.*, pp. 17-18). While the legal standard is the same, the discussion of each argument will be distinct.

### A. Applicable Law

Claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Under the law of this Circuit, because counsel is presumed effective, Richardson "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). In order to prevail on a claim for ineffective assistance of counsel upon collateral review, a petitioner must meet the two-pronged *Strickland* test and establish that "(1) his counsel's performance fell below an objective standard of reasonableness; and, (2) that his deficient performance so prejudiced his defense that he was deprived of a fair trial."

*Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (*citing Strickland v. Washington*, 466 U.S. 668, 688-94 (1984)). Stated another way, under the *Strickland* test the defendant must show that his counsel's actions were not supported by a reasonable strategy, and that the error was prejudicial. *Massaro*, 538 U.S. at 501.

The first prong of the Strickland test, classified as the "performance prong," calls for a defendant to direct the Court to specific acts or omissions forming the basis of his claim. *Trevino*, 60 F.3d at 338. The Court then must determine whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id*. While making this assessment, the Court must be mindful of the strong presumption that counsel's performance was reasonable. *Accord Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

In evaluating an ineffective assistance claim, a court does not always need to analyze both prongs because failure to satisfy either prong is fatal to the claim. *United States v. Ebbole,* 8 F.3d 530, 533 (7th Cir. 1993) *citing Strickland,* 466 U.S. at 697. In other words, if the defendant fails to satisfy the first prong, there is no need to address the second prong.

If, however, the defendant satisfies the "performance prong", he must then meet the "prejudice prong" of *Strickland*. *Ebbole,* 8 F.3d at 533. This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Emezuo v. United States,* 357 F.3d 703, 707-08 (7th Cir. 2004) *citing Strickland*, 466 U.S. 52 (1985).

Finally, a reasonable probability is one that undermines confidence in the outcome of the trial. *Strickland,* 466 U.S. at 694. The likelihood of a different outcome "must be substantial, **not** just conceivable." *Richter v. Harrington,* 562 U.S. 86, 112 (2011).

### B. Discussion

#### 1. Travadol

Richardson first asserts that Cronin failed to investigate Travadol[2] and/or produce evidence about possible side effects that could include depression and/or confusion (Doc. 14, pp. 9-14). Specifically, Richardson argues that this evidence would have supported a successful pretrial challenge to the voluntariness and admissibility of the evidence, i.e. suppression of Richardson's statement, but that is a conclusory statement (*Id.*).

While approaching the police, Richardson slipped and fell on icy pavement. He was taken to Touchette Regional Hospital in Centreville, Illinois with a knee injury and he received an injection of Toradol (Doc. 14, p. 3). Upon discharge, Richardson was interviewed by investigators who were aware he had received an injection of something that he called, "Tram-tram-a something." (Doc. 14-1, p.11). When asked, Richardson denied any history of mental illness and stated he understood what was going on and he did not think the pain medicine was messing

---

[2] Throughout the amended motion to vacate conviction and correct sentence (Doc. 14), Richardson refers to his injection as both Travadol and Toradol; however, there is no medication "Travadol". When conducting a medication search, you are directed to Tramadol and Taradol, which are not interchangeable and belong to different drug classes. Toradol is a nonsteroidal anti-inflammatory and tramadol is a narcotic pain reliever. *See* www.rxlist.com/toradol_vs_tramadol/drugs-contidion.htm

him up in the head (*Id.*, p. 12). At no point did the investigators stop the interview to look into the medication and/or potential side effects.

Richardson argues that Cronin was ineffective for not investigating the medication he was provided and for not moving to suppress the statement he gave to investigators (Doc. 14). Richardson further claims he asked his attorney to challenge the voluntariness of the statement and was told that the medication did not provide grounds (*Id.*, p. 9).

When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious. *Owens v. United States,* 387 F.3d 607 (7th Cir.2004). Although Richardson claims an investigation into the side effects of the Toradol medication would have supported a successful pretrial challenge to the voluntariness and admissibility of the evidence, there is no guaranteed outcome.

Generally, when an attorney articulates a strategic reason for a decision, the court defers to that choice. *Strickland,* 466 U.S. at 690–91. If an attorney's decision was sound at the time it was made, the decision cannot support a claim of ineffective assistance of counsel. *Winters v. Miller,* 274 F.3d 1161, 1166 (7th Cir.2001).

In their response, the government provided an affidavit of Dan Cronin regarding his representation of Richardson (Doc. 23-12). In it, Cronin advised that he did not seek to suppress the statement because he did not have a good basis in fact to do so (*Id.*). Cronin met with Richardson many times and did not feel that Richardson's demeanor was any different during the interview nor did it show any

impairment (*Id.*). Cronin was more familiar with Richardson than he was with pharmaceuticals and mental health (*Id.*). He was aware that Richardson's speech was slower when discouraged and rapid when excited or persuasive (*Id.*). Cronin also recalled the infamous Rosanne Barr incident when she tried to blame her racist statements on her use of Ambien and did not want to lose his credibility with the jury (*Id.*).

As set forth in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 690-691; *Wiggins v. Smith,* 539 U.S. 510 (2003). A fair-minded jurist could conclude that counsel's performance was not deficient because Cronin reasonably determined that investigation was not warranted and a motion to suppress would have failed. *See Premo v. Moore,* 562 U.S. 115 at 124 (2011). Cronin's performance was not deficient, and Richardson's argument fails.

### 2. Failed to Object to Trial Testimony

Richardson's second claim for ineffective assistance of counsel was that trial counsel was ineffective in failing to object to a statement made by officer Slack during trial and/or to request a limiting statement (Doc. 14, pp. 15-16). As set forth previously, in order to succeed on his claim of ineffective assistance of counsel, Richardson must show that Cronin's performance was deficient such that he was

prejudiced as a result. *Strickland,* 466 U.S. at 687. Performance and prejudice do not need to considered in a particular order nor do both even need to be addressed if Richardson makes an insufficient showing on one. *Id.* at 697.

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.*, at 689. Indeed, surmounting *Strickland's* high bar is never easy. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687.

With respect to the performance prong, Cronin provided a reasonable basis for not objecting when he stated in his affidavit:

> "I did not object to Chief of Public Safety Cortez Slack's hearsay testimony about Albert Richardson, Sr. stating that Albert Richardson, Jr. had shot a gun, because I was concerned that a successful objection might prompt the government to call the elder Richardson as a witness. I feared that testimony from my client's father would be more damaging than the hearsay which came in through Chief Slack's testimony. I participated in an interview of Albert Richardson, Sr. prior to the trial, and only included him on the defense's witness list in case any law enforcement witnessed badly characterized what Albert Richardson, Sr. told them. On that note, while Chief Slack's testimony that Albert Richardson, Sr. told him he saw his son shoot a gun was inconsistent with the clarification written by Matthew Bradford, it was consistent with the report written by Officer Keith Randolph "who did not testify" and with Chief Slack's own report." (Doc. 23-12, ¶3).

Cronin had to make an instantaneous decision whether to remain quiet about

Slack's testimony or whether to potentially open the door to more potentially more damning testimony, that of Albert Richardson, Sr. He made a choice and he has wide latitude in making tactical decisions and a constitutionally protected independence of counsel." *Strickland,* 466 U.S. at 689.

After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Richter,* 562 U.S. 86, 110. *Strickland,* however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. *Id.*

Beyond the general requirement of reasonableness, "specific guidelines are not appropriate." *Id.* at 688. There is "[n]o particular set of detailed rules for counsel's conduct that can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions. Id. Indeed, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way". Because Richardson cannot show that Cronin's performance was unreasonable for not objecting during chief Slack's testimony, this argument also fails.

### 3. Failed to Object to Submission of Transcript

Richardson's final argument of ineffective assistance of counsel against Cronin is that he failed to object to the court's submission of the transcript of chief Slack to the jurors during deliberation, which highlighted the statement allegedly

made by Albert Richardson, Sr. (Doc. 14, pp. 17-18). During the course of deliberations, the jury requested the trial transcript of chief Slack's testimony. The Court discussed this matter with both the prosecutor and Cronin, and after neither side objected, submitted the transcript. Shortly thereafter, a guilty verdict was reached.

In his affidavit, Cronin averred,

"I did not object to the jury being given a transcript of Chief Slack's testimony because I believed that – despite the damaging aspects of his testimony – his concessions that he did not know if Albert Richardson, Jr. had either shot or possessed a gun were the best hope for the jury concluding there was reasonable doubt of my client's guilt. An instruction for that jury to consider all other evidence as well would have only taken the jury's focus away from what I thought was the best chance for an acquittal or a hung jury for Albert Richardson, Jr." (Doc. 23-12, ¶4).

Again, Cronin made a strategic decision. Neither he nor the prosecution could not know what testimony the jurors were considering or why they wanted the transcript of Chief Slack's trial testimony. While hindsight is twenty-twenty, it is impossible to say with certainty that the outcome would have been different, i.e. not guilty, without this transcript. As such, neither prong can be satisfied. First, Cronin's conduct met the performance prong in that he had a rational, reasonable argument for his stipulation. Second, Richardson cannot meet the prejudice prong as there is no evidence to support the substantial probability of a different verdict without the submission of the transcript or whether it is "reasonably likely" the result would have been different. Without more, this argument of ineffective assistance of counsel must also be denied.

## CONCLUSION

Albert L. Richardson's Amended Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 14) is **DISMISSED** with prejudice. The Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

**DATED: March 26, 2021**

**/s/ Stephen P. McGlynn**
**STEPHEN P. McGLYNN**
**U.S. District Judge**
